ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| MARTHA ESTHER CRUZ ROMÁN<br><br>Recurrente<br><br>v.<br><br>MIGUEL A. CRUZ ROMÁN<br><br>Recurrido | TA2026CE00077 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2024CV00662<br><br>Sobre: Liquidación de Comunidad de Bienes |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de abril de 2026.

Compareció la Sra. Martha Esther Cruz Román (en adelante, señora Cruz Román o peticionaria), mediante recurso de *Certiorari* presentado el 20 de enero de 2026. Nos solicitó la revisión de la *Resolución*, emitida y notificada el 8 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, foro primario). Mediante esta, el foro primario ordenó a la señora Cruz Román y al Sr. Miguel Cruz Román (en adelante, señor Cruz Román o recurrido) a comparecer ante Centro de Recaudación de Ingresos Municipales (en adelante, CRIM) para realizar los trámites de la exoneración contributiva.

Por los fundamentos que expondremos a continuación, se **deniega la expedición** del auto de *Certiorari*.

**-I-**

El 14 de abril de 2024, la señora Cruz Román presentó una *Demanda* de liquidación de comunidad de bienes.[1] En lo pertinente,

---

[1] Véase, Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (en adelante, "SUMAC-TPI"), entrada núm. 1, pág. 1-2.

solicitó que se liquidara una sucesión hereditaria entre la señora Cruz Román y el Sr. Miguel Cruz Román (en adelante, señor Cruz Román o recurrido). Igualmente, solicitó que se vendiera una propiedad sita en el Municipio de Arecibo y que se pagara una deuda pendiente en el Centro de Recaudación de Ingresos Municipales (en adelante, CRIM).

En respuesta, el señor Cruz Román presentó el 26 de abril de 2024, *Contestación a Demanda y Reconvención.*[2] Alegó, que el único bien sujeto a división era la propiedad sita en el municipio de Arecibo. Expuso, además, que en ningún momento se había negado a disolver la comunidad de bienes existente entre las partes de epígrafe. Sostuvo por igual, que existían deudas sobre la comunidad hereditaria. Por último, solicitó la liquidación del inmueble objeto de controversia, así como la imposición de costas gastos y honorarios de abogado por la cantidad de $5,000.00 dólares.

Tras varios incidentes procesales, el 5 de diciembre de 2025, el señor Cruz Román presentó *Moción Informativa y en Solicitud de Orden.*[3] En específico, alegó que se había personado ante el CRIM y que una empleada de dicha agencia le manifestó que era requisito que comparecieran ambos dueños de la propiedad en controversia de forma presencial, o en su defecto se otorgara un poder legal. Por lo cual, solicitó al foro primario que ordenara a la señora Cruz Román a comparecer presencialmente ante el CRIM.

El 8 de diciembre de 2025, el foro primario emitió la *Resolución Interlocutoria* recurrida, mediante la cual, ordenó a las partes de epígrafe a comparecer ante el CRIM a los fines de realizar los trámites correspondientes a la exoneración contributiva de la propiedad en cuestión. El foro primario indicó que, en caso de que la señora Cruz Román no pudiese comparecer presencialmente,

---

[2] SUMAC-TPI, entrada núm. 5.
[3] SUMAC-TPI, entrada núm. 117.

podría otorgar un poder para que otra persona la representara en dicho trámite.

En desacuerdo, el 9 de diciembre de 2026, la señora Cruz Román presentó una *Solicitud de Reconsideración.*[4] En síntesis, alegó que, para que el CRIM autorizara una exoneración contributiva, la propiedad objeto de controversia no podía reflejar deuda alguna. Sostuvo que la referida propiedad mantenía un balance adeudado ascendente a $8,485.32 dólares. Según indicó, una empleada del CRIM le informó, mediante llamada telefónica, que debido a que ella no residía en la propiedad, no era necesaria su comparecencia de forma presencial ni mediante un poder, para que el señor Cruz Román tramitara la solicitud la exoneración contributiva. Ello contrastaba, según indicó, con lo expresado por el señor Cruz Román, quien sostuvo que en las oficinas del CRIM le requerían la presencia de la señora Cruz Román, o en su defecto un poder para efectuar el cambio de titularidad. A la luz de lo antes expuesto, entre otros señalamientos, la señora Cruz Román solicitó al foro primario la celebración de una vista evidenciaria. Indicó que dicho procedimiento resultaba necesario para realizar una llamada al CRIM y así poder acreditar la información brindada por ésta. Añadió que ello demostraría que no podía ser compelida a comparecer de manera presencial, ni a otorgar un poder, para autorizar su acogida a un plan de pago ante la referida entidad.

Inconforme y tras denegada una solicitud de reconsideración, el 20 de enero de 2026, la peticionaria acudió ante este Tribunal mediante el recurso de epígrafe. En el mismo, señala la comisión de los siguientes errores:

> Cometió error el Tribunal de Primera Instancia al desnaturalizar la naturaleza del pleito, tratándolo como si se tratara de un caso de administración de bienes hereditarios, cuando el presente litigio es exclusivamente uno de división y liquidación de bienes

---

[4] SUMAC-TPI, entrada núm.121.

hereditarios, sin que la administración del caudal relicto haya sido solicitada por las partes ni surja de la demanda ni de la reconvención, actuando así fuera del marco procesal y jurídico del caso y asumiendo funciones que no le fueron requeridas.

Cometió error el Tribunal de Primera Instancia al ordenar a la demandante-recurrente a comparecer personalmente ante el Centro de Recaudación de Ingresos Municipales (CRIM) o, en la alternativa, a otorgar un poder legal, y al forzar directa o indirectamente su consentimiento a un plan de pago contributivo oneroso, como condición para continuar el trámite judicial, sin base legal ni reglamentaria, y en violación a los principios de autonomía de la voluntad y consentimiento libre y voluntario.

Cometió error el Tribunal de Primera Instancia al apreciar la prueba de forma desigual y arbitraria, otorgando credibilidad a manifestaciones verbales del demandado basadas exclusivamente en supuestas expresiones de terceras personas no identificadas del CRIM, sin documentación oficial alguna, mientras rechazó considerar e incluso escuchar la evidencia directa, pertinente y verificable presentada por la demandante-recurrente sobre las gestiones efectivamente realizadas por su representación legal con personal autorizado de dicha agencia.

Por su parte, el 4 de febrero de 2026, el recurrido presentó su *Alegato en Oposición de Parte Recurrida.* Con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la norma jurídica aplicable a la controversia ante nuestra consideración.

-II-

**A. Certiorari**

El recurso de *Certiorari* es un mecanismo procesal que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Distinto al recurso de apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *Certiorari* de manera discrecional. *García v. Padró,* 165 DPR 324, 334 (2005). Sin embargo, tal discreción debe ejercerse de

manera razonable, procurando siempre lograr una solución justiciera. *Torres González v. Zaragoza Meléndez,* supra, pág. 847.

En específico, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, a saber:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

*Íd.*

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* este tribunal intermedio procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, págs. 59-60, 215 DPR ___ (2025). La referida Regla establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari,* a saber:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*Id.*

Cabe precisar que nuestro Tribunal Supremo ha expresado que —para el buen funcionamiento del sistema judicial y la rápida disposición de los litigios— el juzgador de Instancia tiene gran flexibilidad y discreción para atender y conducir los asuntos litigiosos ante su consideración. *In re Collazo I,* 159 DPR 141, 150 (2003). Esto es, el adjudicador del foro primario tiene plena facultad para conducir el proceso judicial que atiende de acuerdo con su buen juicio y discernimiento al interpretar el derecho aplicable. Dado a eso, la norma general es que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y cuando se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022).

Por tanto, la denegatoria a expedir un recurso discrecional responde a la facultad de este tribunal intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia y no implica la ausencia de error en el dictamen recurrido ni una adjudicación en los méritos. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

**-III-**

En el presente caso, la peticionaria adujo que el foro primario erró al tratar el presente litigio como uno de administración de bienes hereditarios en vez de división y liquidación de bienes hereditarios. Igualmente, adujo que el foro primario erró al ordenarle a la peticionaria a comparecer personalmente ante el CRIM. Arguyó, además, que el Tribunal de Primera Instancia erró al apreciar la prueba de forma desigual y arbitraria.

El foro primario ordenó a las partes de epígrafe a comparecer ante la agencia gubernamental del CRIM, por entender que se debía aclarar las discrepancias surgidas por la referida entidad, previo a proceder con el pago de la deuda reclamada. Para ello, y ante las versiones encontradas de ambas partes, el foro primario entendió necesario que las partes de epígrafe debían comparecer ante el CRIM para poder aclarar si se tramitaría la exoneración contributiva sobre la propiedad objeto de controversia y la cantidad adeudada ante dicha agencia, de manera que se hiciera innecesaria la celebración de una vista evidenciaria sobre un asunto que no está sujeta al control de ninguna parte, sino de la correspondiente agencia gubernamental.

Examinado el expediente ante nuestra consideración, concluimos que el foro primario actuó dentro del ámbito de la discreción que le confiere nuestro ordenamiento jurídico. Así, justipreciamos que no se reúnen los criterios necesarios para que ejerzamos nuestra facultad revisora que justifican la expedición del auto bajo los fundamentos de la Regla 40 de nuestro Reglamento. Por tal razón, denegamos expedir el auto solicitado.

**-IV-**

Por los fundamentos previamente expuestos, **se deniega expedir** el auto de Certiorari.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones